# In the United States Court of Federal Claims

|  |  |
|---|---|
| MICHAEL GRAVES, et al.,<br><br>                  *Plaintiffs,*<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>                  *Defendant*. | No. 21-1464L<br>(Filed: July 7, 2022)<br><br>Takings; Physical Takings; Land-Use Exaction; Statute of Limitations; Motion to Dismiss |

*A. Blair Dunn*, Albuquerque, NM, for Plaintiff.

*Mark Pacella*, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

      Plaintiffs Michael Graves and Sue Ann Graves allege that the United States took their property interest in a Colorado forest road through a physical taking without just compensation, in violation of the Fifth Amendment to the United States Constitution. The Government filed a motion to dismiss, in which it argued that Plaintiffs' Complaint is barred by the six-year statute of limitations for claims brought under the Tucker Act. This Court held oral argument on the Government's Motion on May 19, 2022. For the reasons that follow, the action was brought beyond the statute of limitations, Defendant's Motion to Dismiss is **GRANTED**, and the Complaint is **DISMISSED**.

**I.**    **Background**

    **A.**    **Factual Background**[1]

        **1.**    **Forest Road 252 1B**

      Michael Graves and Sue Ann Graves own property (the "Graves Property") in rural Conejos County, Colorado, completely encased within the boundaries of the Rio Grande

---

[1] The Court includes jurisdictional facts drawn from the Government's motion. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991) (holding that the Court may "inquire into jurisdictional facts" to determine whether it has jurisdiction).

National Forest.  *See* Compl. ¶¶ 1, 12–14, ECF No. 1; Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1, ECF No. 7.  The property has historically been accessed by way of a United States Forest Service ("USFS" or "Forest Service") Forest Road ("FR") and its offshoot—FR 252 and FR 252 1B, respectively.  Compl. ¶ 2; Def.'s Mot. at 1.  Both roads sit on federal National Forest land.  *See* Compl. ¶¶ 2–4; Def.'s Mot. at 1; Def.'s Mot. Ex. 3, ECF No. 7-3 (Conejos Peak Ranger District map); Def.'s Mot. Ex. 4, ECF No. 7-4 (National Forest Road designation map).  Plaintiffs allege that they own a real property right-of-way easement on the offshoot road, which they refer to as the "Graves private road."  *See* Compl. at 1–2, ¶¶ 1, 2, 25.

Under the Mining Act of 1866, which later became section 2477 of the Revised Statutes ("R.S. 2477"), private landowners surrounded by public lands could establish a right-of-way interest over access roads to their property.  Mining Act of 1866, § 8, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932, *repealed by* Federal Land Policy Management Act of 1976, Pub. L. No. 94-579, § 706 (a), 90 Stat. 2743, 2793; *see generally* Pamela Baldwin, Cong. Rsch. Serv., No. 93-74A, *Highway Rights of Way: The Controversy Over Claims Under R.S. 2477* (1993).  Plaintiffs claim that their physical right-of-way property interest in the FR 252 1B offshoot was established around 1912 under R.S. 2477 from the original grant of the Graves Property.  *See* Compl. ¶¶ 8, 9 (citing R.S. 2477); *id.* at ¶¶ 2, 22; Pl.'s Resp. and Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 5–10, ECF No. 8.  They trace the chain of title on the Graves Property to 1912 and allege that FR 252 1B is an offshoot of a road established in 1895 and 1896.  *See* Compl. ¶¶ 18, 22.

In approximately 1995, ownership of the Graves Property passed to Mr. Graves's mother, Margarite Lindsey.  *See* Compl. ¶ 17; Compl. Ex. 2, ECF No. 1-2.  In 1996, she signed a "private road easement" or "permanent easement" with the USFS that permitted her access to the Graves Property using FR 252 1B.  *See* Compl. ¶ 17; *see also* Compl. Ex. 2; Def.'s Mot. Ex. 1, ECF No. 7-1.  This easement grant recognized that the USFS owned the road and gave Ms. Lindsey a "nonexclusive easement for use of a road."  Def.'s Mot. Ex. 1.  Plaintiffs acquired the Graves Property in their names in 1999.  *See* Compl. Ex. 2.

## 2. The Forest Service's Management of Forest Road 252 1B

Under the Federal Land Policy and Management Act of 1976 ("FLPMA"), the USFS has authority to manage the "roads, trails [and] highways" over public forest land, which the Forest Service organizes into a system of national forest roads.  43 U.S.C. § 1761(a)(6); *see generally*, *United States v. Jenks*, 22 F.3d 1513, 1515–17 (10th Cir. 1994).  For non-public roads, the USFS issues private easements and other special-use permits that dictate private access requirements.  *See, e.g.*, *Fitzgerald Living Tr. v. United States*, 460 F.3d 1259, 1261–62 (9th Cir. 2006) (describing an example of a plaintiff's permits and easements).

Plaintiffs explain that FR 252 1B was a "pre-forest reservation road" until around 2009, when "the Forest Service declared the road a 'system' road when previously it was not a system road and was never maintained."  Compl. ¶¶ 18–19.  Following the declaration of FR 252 1B as a national forest system road, the USFS installed a sign ("FR 252 1B"), but Plaintiffs allege they were not given notice that the road was "taken" under USFS control.  *Id.* ¶ 19.  Then, in 2012, the Bureau of Land Management allegedly "surveyed the road to provide the proper legal description for a special use permit."  *Id.* ¶ 3.

### 3. The Forest Service's Alleged Taking

Plaintiffs allege that in 2012, the USFS "pressed Mr. Graves into waiving the permanent renewable easement" previously signed by his mother "for a revocable special use permit." Compl. ¶ 17.[2] The Graveses signed a "Private Road Easement Issued Under the [FLPMA]" (the "2012 FLPMA Easement") that, like the prior agreement, permitted them access to their property using FR 252 1B.[3] Def.'s Mot. Ex. 2, ECF No. 7-2 at 1; *see* Compl. ¶ 17. The FLPMA Easement is "a nonexclusive easement for use of a road" that places multiple restrictions on Plaintiffs' use. Def.'s Mot. Ex. 2 at 1. For example, it requires that Plaintiffs pay annual fees and reserves the USFS's right to use the road, extend use of the road to other users, issue rights-of-way to others, and "terminate this easement if [it] assumes jurisdiction and control of the road as a National Forest System Road and issues a replacement easement." *Id.* at 3–4. The Graveses signed the FLPMA Easement on September 26, 2011, and the USFS approved the easement on January 4, 2012. *Id.* at 1, 5. It remains in effect today. Compl. ¶ 17.

Plaintiffs assert that the 2012 FLPMA Easement did not apply to them or extinguish their rights in the road. Oral Arg. Tr. at 6:23–8:9, ECF No. 14; *see* Compl. ¶¶ 19–23; Pl.'s Resp. at 3. They recognize that the Forest Service is permitted under FLPMA to regulate their interest—such as by use of an easement application—but maintain that they had a verbal understanding with the USFS that the 2012 Easement did not require them to forgo their right-of-way under R.S. 2477. *See* Oral Arg. Tr. at 13:19–23. For example, Plaintiffs' counsel highlights that it is common for the USFS to have other agreements and notes that they did not pay the permit fee for a period of years when they were told it was not required. *See* Oral Arg. Tr. at 15:15–24.

Then, in 2016, Plaintiffs allege that a USFS official told them that the Forest Service had seized the forest road and stated that "even if [FR 252 1B] was previously a private easement[,] that it was now a forest system road belonging to the federal government." Compl. ¶ 19. Plaintiffs "provided a copy of a warranty deed stating FR 252 1B was a private road easement," but were told that "FR 252 1B was not [their] property." *Id.* ¶ 4.

Overall, the Graveses maintain that they hold a private right-of-way interest in FR 252 1B that grants them exclusive use. *See id.* ¶¶ 4, 14, 26; Oral. Arg. Tr. at 11:7–10, 14:8–9, 15:6–8. They allege that the USFS, "by denying and refusing to recognize the statutorily vested real property right-of-way easements of Plaintiffs, by extracting special use permits, permit fees, and by declaring that the private property right of way easement was a public easement in 2018[,] took . . . private property away from the Plaintiffs through inverse condemnation."

---

[2] Plaintiffs allege that easement discussions with the Forest Service occurred in 2012. *See* Compl. ¶ 17. However, the Graveses signed the 2012 FLPMA Easement in 2011. Def.'s Mot. Ex. 2 at 7.

[3] Though Plaintiffs allege that the 2012 FLPMA Easement was a "revocable special use permit" that was different in kind from the "permanent renewable easement" signed by Mr. Graves's mother, both permits are labeled as a "Private Road Easement," and both dictate a similar set of terms. *Compare* Def.'s Mot. Ex. 1 (1996 FLPMA Easement to Lindsey), *with* Def.'s Mot. Ex. 2 (2012 FLPMA Easement to Graves). Moreover, Plaintiffs do not allege that the different names are legally relevant for the purposes of this case.

Compl. at 1.  Specifically, the Plaintiffs argue that the "Forest Service requirement that Mr. Graves maintain an easement, pay fees, and the requirement of a special use permit, and allowing other landowners to use Mr. Graves [sic] private easement constitutes a taking under the Fifth Amendment."  *Id.* ¶ 23; *see also* Compl. ¶¶ 25–26.

### B.      Procedural Background

Plaintiffs filed a Complaint on June 11, 2021, for just compensation for the alleged taking.  *See* Compl.  The Government filed a motion to dismiss on October 12, 2021.  *See* Def.'s Mot.  Plaintiffs filed a response brief, *see* Pl.'s Resp., and the Government filed a reply brief, *see* Def.'s Reply Mem. in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF No. 9.

## II.     Legal Standards

### A.      Subject Matter Jurisdiction

Under the Tucker Act, the Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  Because the Tucker Act only waives sovereign immunity and does not create substantive rights, a plaintiff must identify a separate source of law that can be fairly interpreted as creating a right to money damages.  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005); *see also United States v. Navajo Nation*, 556 U.S. 287, 289–90 (2009).

The Tucker Act encompasses the Fifth Amendment Takings Clause, which is a money-mandating provision that grants jurisdiction in this Court.  *See Williams v. United States*, 289 U.S 553, 581 (1933); *Jan's Helicopter Serv., Inc v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("[T]he Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction.").  This Court has exclusive jurisdiction for inverse condemnation claims exceeding $10,000.  *See* 28 U.S.C. § 1491; *Morris v. United States*, 392 F.3d 1372, 1375 (Fed. Cir. 2004).

Subject matter jurisdiction is a threshold issue.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  If this Court determines that it lacks subject matter jurisdiction, it must dismiss the action.  RCFC 12(h)(3).  Under RCFC 12(b)(1), the burden of proving jurisdiction lies with the plaintiff seeking to invoke this Court's jurisdiction.  *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998); *see The George Fam. Tr. ex rel George v. United States*, 91 Fed. Cl. 177, 189 (2009) ("[I]t is a plaintiff's responsibility to allege facts sufficient to establish the court's subject matter jurisdiction.").

When a party challenges the truth of the jurisdictional facts alleged in the complaint, this Court determines whether the plaintiff has established jurisdiction by a preponderance of the evidence.  *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Additionally, the Court may "inquire into jurisdictional facts" to determine whether it has jurisdiction.  *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991).

### B. Statute of Limitations

The United States Court of Federal Claims has a six-year statute of limitations. 28 U.S.C. § 2501. Compliance with the statute of limitations is a jurisdictional issue that cannot be equitably tolled or waived. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–35 (2008); *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1264 (Fed. Cir. 2017); *Davis v. United States*, 108 Fed. Cl. 331, 339 (2012), *aff'd*, 550 F. App'x 864 (Fed. Cir. 2013) ("The six-year time bar on actions against the United States is jurisdictional, because filing within the six-year period is a condition of the wavier of sovereign immunity in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1).") (collecting cases).

## III. Discussion

The Government filed a motion to dismiss under RCFC 12(b)(1) on the grounds that Plaintiffs' claims are barred under the Tucker Act's six-year statute of limitations. Def.'s Mot. at 15–16. The Government also argues that this Court lacks jurisdiction over Plaintiffs' demands for declaratory and injunctive relief and for claims against individually named defendants. Def.'s Mot. at 16–20. Lastly, the Government moves to dismiss under RCFC 12(b)(6) for the Plaintiffs' alleged failure to state a cognizable takings claim. Def.'s Mot. at 20–27. Because the Court ultimately concludes that Plaintiffs' alleged taking is outside the statute of limitations—and this Court therefore lacks subject matter jurisdiction—the merits of the Graveses' alleged property interest under R.S. 2477 are not determined.

### A. Plaintiffs' Burden to Prove Subject Matter Jurisdiction

As an initial matter, Plaintiffs contend that allegations of fact "must be inferred in favor of Plaintiffs" and that it "is not appropriate to construe facts against the non-movant Plaintiff." Pl.'s Resp. at 4–5. Generally, Plaintiffs are correct that this Court must accept all reasonable inferences in their favor during the pleading stage. *See Carter v. United States*, 62 Fed. Cl. 66, 69 (2004) ("When a defendant does not challenge the jurisdictional facts alleged in the complaint and instead makes a challenge to the face of the complaint, the court must accept all factual allegations as true and 'must draw all reasonable inferences in the non-movant's favor.'") (quoting *Sumter v. United States*, 61 Fed. Cl. 517, 520 (2004)). Typically, a "plaintiff's complaint need only contain 'a short and plain statement of the grounds upon which the court's jurisdiction depends.'" *Id.* (citing RCFC 8(a)(1)); *see also ABBA Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 984 (Fed. Cir. 2014).

However, when a defendant challenges the jurisdictional facts alleged in a complaint, the Court can engage in fact finding and determine whether the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748; *cf. Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016). When this occurs, "only uncontroverted factual allegations are accepted as true," *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993), and the Court may consider other relevant evidence to resolve the factual dispute, *Reynolds*, 846 F.2d at 747. And here, the Government challenges the Plaintiffs' assertion of jurisdiction for a claim within the six-year statute of limitations. *See* Def.'s Mot. at 15–16; Def.'s Reply at 3–4.

5

B.    **Statute of Limitations**

1.    **Claim Accrual for Physical Takings**

Under the Fifth Amendment to the United States Constitution, the Government may not take "private property . . . for public use, without just compensation." U.S. Const. amend. V, cl. 4. Claims for just compensation for takings under the Tucker Act must be filed in this Court within six years of the accrual of the takings claim. 28 U.S.C. § 2501; *Boling v. United States*, 220 F.3d 1365, 1370 (Fed. Cir. 2000). Generally, "a takings claim accrues when 'all events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.'" *Boling*, 220 F.3d at 1370 (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)); *see also Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1359 (Fed. Cir. 2013).

Plaintiffs allege a physical taking. Pl.'s Resp. at 15 ("[T]he United States has deprived [Plaintiffs] of the title and the free enjoyment of the properties and easement through inverse condemnation by physical taking."). Typically, "[t]he act that causes accrual of a physical taking claim is the act that constitutes the taking." *Casitas Mun. Water Dist.*, 708 F.3d at 1359 (citing *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009)). For example, a physical takings claim regularly accrues on "the date on which the plaintiff's land has been clearly and permanently taken." *Boling*, 220 F.3d at 1370 (citing *Seldovia Native Assoc., Inc. v. United States*, 144 F.3d 769, 774 (Fed. Cir. 1998)). "The clock starts as soon as the plaintiff is put on notice that inquiry into a possible claim is called for." *L.E. Cooke Corp. v. United States*, 27 Fed. Cl. 753, 754 (1993); *see Menominee Tribe of Indians v. United States*, 726 F.2d 718, 720–21 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 826 (1984).

In addition, "a viable takings claim can arise in the 'special context of land-use exactions'" when a governmental body demands that a private landowner surrender property as a condition for obtaining a permit. *Martin v. United States*, 894 F.3d 1356, 1361 (Fed. Cir. 2018) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005)). In this context, the "government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property" without meeting heightened requirements. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S 595, 599, 605–06 (2013); *see also Martin*, 894 F.3d at 1361.

2.    **The Plaintiffs' Alleged R.S. 2477 Property Interest**

The Graveses allege a physical taking, coupled with a land-use exaction, of their private right-of-way interest in FR 252 1B. *See* Compl. ¶¶ 23–26. Specifically, they claim that the required special-use permit—the 2012 FLPMA Easement—constitutes a physical taking of their right-of-way interest in FR 252 1B, which the Graveses derived as granted to their inholding under R.S. 2477. Compl. ¶¶ 8, 23, 25; *see also* Oral Arg. Tr. at 5:5–21.

R.S. 2477 held that "the right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Mining Act of 1866, § 8, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932, *repealed by* FLPMA, Pub. L. No. 94-579, § 706(a), 90 Stat. 2743, 2793 (1976); *see also* Pl.'s Resp. at 6; Compl. ¶ 8; *see generally Cnty. of Inyo v. Dep't of Interior*, 873 F. Supp. 2d 1232, 1235 (E.D. Cal. 2012) (describing history of the Mining Act of

6

1866).  The Act recognized a right of ingress and egress to landowners and codified an implied license to a right-of-way for the construction of roads ("highways") for private lands situated within public lands ("inholdings").  *See generally* Pamela Baldwin, Cong. Rsch. Serv., No. 93-74A, *Highway Rights of Way: The Controversy Over Claims Under R.S. 2477* (1993). Because establishing a right-of-way under R.S. 2477 "required no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side," these interests have become "one of the more contentious land use issues in the West."  *S. Utah Wilderness All. v. BLM*, 425 F.3d 735, 740–41 (10th Cir. 2005).

The Federal Land Policy and Management Act ("FLPMA") of 1976 reformed the federal government's approach to public lands.  *See* 43 U.S.C. § 1701 *et seq.*; *see S. Utah Wilderness All.*, 425 F.3d at 741 ("[FLPMA] instituted a preference for retention of the lands in federal ownership.").  It repealed R.S. 2477 but kept remaining right-of-way interests intact without altering access for inholdings, specifying that any "valid" rights-of-way "would continue in effect."  *S. Utah Wilderness All.*, 435 F.3d at 740 (citing Pub. L. No. 94-579, § 701(a), 90 Stat. 2743, 2786).

However, FLPMA nevertheless permitted the Forest Service to reasonably regulate R.S. 2477 right-of-way interests, such as with special-use permits or other private easement grants. 43 U.S.C. § 1761(b); *see, e.g.*, *Martin*, 894 F.3d at 1360 (discussing the USFS's special-use permit requirement for plaintiffs' road reconstruction).  Reasonable regulation of inholdings was further clarified in the Alaska National Interest Lands Conservation Act of 1980.  Pub. L. No. 96-487, 94 Stat. 2371, *codified at* 16 U.S.C §§ 3101–3233; *see* 16 U.S.C. § 3210(a) (clarifying the reasonable regulation requirement); *Jenks*, 22 F.3d at 1516 (describing the reasonable regulation requirement under FLPMA).

The Graveses recognize that the Forest Service can impose reasonable regulations on their access.  Oral Arg. Tr. at 23:7–13, 23:24–24:23, 31:3–12.  Nevertheless, they assert that the USFS's requirement that they sign a special-use permit acts as an unconstitutional land-use exaction and inversely condemns their property interest derived under R.S. 2477.  *See* Compl. ¶¶ 23–26; Oral Arg. Tr. at 23:7–13.

### 3. Plaintiffs Should Have Been Aware of the Alleged Taking in 2011

Whether a plaintiff "was or should have been aware" of a taking for accrual purposes, *see Hopland*, 855 F.3d at 1577, is "determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (internal quotation marks omitted) (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995)).

The Complaint spotlights three relevant dates: (1) "In 2012[,] the Forest Service pressed Mr. Graves into waiving the permanent renewable easement for a revocable special use permit," Compl. ¶ 17; (2) "Sometime after 2009, the Forest Service declared the road a 'system' road . . . [and] did not give notice that they had taken the road," Compl. ¶ 19; and (3) In a November 2016 meeting, a USFS official "stated for the first time on behalf of the Forest Service that even if [FR 252 1B] was previously a private easement that it was now a forest system road belonging to the federal government," Compl. ¶ 19.  The Graveses assert that their

7

takings claim accrued in November 2016 when they were first told that the USFS was claiming ownership of FR 252 1B. Compl. at 10, ¶ 5 (prayer for relief); Oral Arg. Tr. at 4:11–6:4.

Though the Graveses may not have understood prior to 2016, under an objective standard, they *should* have known of any potential takings claim when they signed the 2012 FLPMA Easement. *See* Def.'s Mot. Ex. 2 at 5. Their takings claim is that the "Forest Service requirement that Mr. Graves maintain an easement, pay fees, and the requirement of a special use permit, and allowing other landowners to use [his] private easement constitutes a taking under the Fifth Amendment." Compl. ¶ 23; *see also id.* ¶¶ 25–26. These allegedly unconstitutional requirements were all included in the 2012 FLPMA Easement. *See* Def.'s Mot. Ex. 2. at 1 ("This grant is made subject to the following terms, provisions, and conditions applicable to [the Graveses]."). The 2012 Easement requires that the Graveses pay an annual fee; reserves for the Forest Service the "right to cross and recross the road at any place by any reasonable means and for any purpose"; grants the Forest Service the "right alone to extend rights and privileges for use of the road . . . to other users"; and permits the Forest Service the right to "terminate this easement if [it] assumes jurisdiction and control of the road as a National Forest System Road." Def.'s Mot. Ex. 2 at 2–4. The easement is also a "nonexclusive easement for use of a road" that terminates if the United States operates the road as a public highway. *Id.* at 1, 3.

Even if Plaintiffs were not aware that the 2012 FLPMA Easement applied to them and thought that a contrary verbal agreement existed, *see* Oral Arg. Tr. at 13:19–23, the fact that the Graveses both signed a document that unequivocally contradicts that understanding requires an alternative finding. *See* Def.'s Mot. Ex. 2 at 1, 4. Plaintiffs argue that they have a private property interest in the road, entitling them to exclusive ownership and title of an easement with only reasonable government restrictions, yet the easement they signed in 2011 placed upon them the exact limitations and restrictions that they now dispute. *Compare* Compl. ¶ 14, *and* Oral Arg. Tr. at 11:7–10, *with* Def.'s Mot. Ex. 2. According to Plaintiffs, in 2012, they lacked "any understanding at that point that they were surrendering their right to the road, their permanent easement, [or] their private property." Oral Arg. Tr. at 5:14–21. That may be true, but under the objective standard, Plaintiffs should have known that the plain language of the 2012 FLPMA Easement impacted their alleged property interest.

The 2012 FLPMA Easement, coupled with the Graveses' signatures, is enough to constitute objective knowledge. *See Raytheon Co. v. United States*, 104 Fed. Cl. 327, 330–31 (Fed. Cl. 2012) ("Defendant contends that its claims accrued . . . when it completed the initial audit and assessment of Raytheon's costs. . . . In fact, the Government knew or should have known whether any of Raytheon's costs were unallowable after the Advance Agreement was signed."). The Court of Appeals for the Federal Circuit in *San Carlos Apache Tribe* held that the San Carlos Apache's claim against the United States for failure to obtain additional water rights in a 1935 decree accrued on the date of the agreement because "the terms of the Decree plainly and objectively indicate[d] which water rights the Tribe did and, importantly, did not receive." 639 F.3d 1346, 1351 (Fed. Cir. 2011). Even if the Tribe was unaware of the full extent of the 1935 decree until a half-century later, when it learned that other water rights were excluded, the Court held that "under an 'objective standard,' the Tribe knew or should have known that the terms of the Decree precluded the Tribe from seeking additional . . . water rights." *Id.* (internal citations omitted) (quoting *Fallini*, 56 F.3d at 1380). Similarly, the 2012 FLPMA Easement included sufficient specific restrictions on the Graveses use of FR 252 1B to "put [them] on

notice that inquiry into a possible [takings] claim" of their alleged property interest was called for.  *L.E. Cooke Corp.*, 27 Fed. Cl. at 754.

At oral argument, Plaintiffs' counsel maintained that the Graveses did not know in 2012 based on the "objective fact that the Forest Service told them that in exchange for this special-use permit . . . [the USFS is] not requiring you to surrender your property interest."  Oral Arg. Tr. at 31:15–23; *see also id.* at 9:17–20.  But what the Graveses may have believed is not relevant to this standard—that is a question of subjective knowledge.  *See Fallini*, 56 F.3d at 1380 ("[A] plaintiff does not have to possess actual knowledge."); *see also Banks v. United States*, 76 Fed. Cl. 686, 693 (2007) ("[D]efendant's focus on what 'the landowners were aware of' results in a misreading . . . The key issue [for a taking] was an objective determination of the date when the physical process of erosion had reached a point of 'stabilization,' not whether the landowners had believed the situation to be stable.").

Also at oral argument, Plaintiffs' counsel emphasized that the Graveses were not on notice of the taking until the 2016 meeting with the USFS official.  *See* Oral Arg. Tr. at 7:8–8:9.  But even assuming a subjective knowledge standard, the date of the alleged statement by the Forest Service official cannot, on its own, be the accrual date.  A "mere government[al] assertion of ownership does not constitute a taking."  *Katzin v. United States*, 908 F.3d 1350, 1360 (Fed. Cir. 2018).  "A physical taking generally occurs when the government directly appropriates private property or engages in the functional equivalent of a practical ouster of the owner's possession."  *Campbell v. United States*, 932 F.3d 1331, 1337 (Fed. Cir. 2019) (internal quotation marks omitted) (quoting *Katzin*, 908 F.3d at 1361).  An official that shares information about the government's claim of ownership but does not otherwise impact the owner's interest— such as to cause a "permanent physical invasion" or "deprive Plaintiffs of all economically beneficial use of Plaintiffs' property"—does not commit a physical taking.  *Katzin*, 908 F.3d at 1362.  Thus, if a taking occurred in this case, it would have happened on the date that the USFS engaged in the functional equivalent of a practical ouster of the Graveses' possession.  This was the 2012 FLPMA Easement, not the date that the USFS official explained the effects of the easement to them.

Ultimately, if the Plaintiffs did have a takings claim, it accrued with the 2012 FLPMA Easement, regardless of their subjective understanding at that time.  *See Fallini*, 56 F.3d at 1380; *see also, e.g.*, *Raytheon Co.*, 104 Fed. Cl. at 330–31 ("[T]he Government knew or should have known . . . [when] the Advance Agreement was signed.").

### 4.     The Complaint Contradicts Plaintiffs' Stated Understanding

Though the Court finds that the Graveses should have known of the alleged taking when they signed the 2012 FLPMA Easement, there are additional indicators that Plaintiffs should have been aware of restrictions on their alleged R.S. 2477 interest prior to 2012.

First, Plaintiffs acknowledge that in 2009, "the Forest Service declared the road a 'system' road" and installed a sign identifying it as "FR 252 1B."  Compl. ¶ 19.  Plaintiffs thought that the forest road was a "private road that they should be able to use exclusively."  Oral Arg. Tr. at 11:7–10; *see also* Compl. ¶¶ 4, 14, 26.  But the notification that the road was placed in the National Forest Road System, coupled with a sign stating the same, indicates that their use

was nonexclusive or that the Forest Service took their exclusive interest. *See The George Fam. Tr. ex rel. George*, 91 Fed. Cl. at 198 ("The George Trust—particularly Mr. George, having lived on the property for approximately fifty years—is on inquiry of such open and notorious activity by the Corps and the damage attributable thereto.").

Second, the FLPMA Easement that the Graveses signed in 2011 included the same terms and restrictions as the 1996 Easement signed by Mr. Graves's mother. *Compare* Def.'s Mot. Ex. 1 (1996 FLPMA Easement to Lindsey), *with* Def.'s Mot. Ex. 2 (2012 FLPMA Easement to Graves). Like Plaintiffs, Mr. Graves's mother signed a "nonexclusive easement for use of [FR 252 1B.]" Def.'s Mot. Ex. 1. Both easements were "for a road over certain lands or assignable easements owned by the United States." Def.'s Mot. Ex. 1 (emphasis added); Def.'s Mot. Ex. 2 (emphasis added). Both also contained the same restrictions, including: the right of the USFS to terminate the easement if the road became a public highway; to use the road in any manner that did not interfere with the grantee; to extend rights and privileges for use of the road to others; and "to terminate this easement if the Grantor assumes jurisdiction and control of the road as a National Forest System Road and issues a replacement easement providing only for use of the road." Def.'s Mot. Ex. 2 at 4; *see* Def.'s Mot. Ex. 1 at 5.

In sum, other than the small difference in the annual permit fee amount, the two easements are essentially the same. *Compare* Def.'s Mot. Ex. 1 at 4 (containing an annual permit fee of $102.59), *with* Def.'s Mot. Ex. 2 at 2 (containing an annual permit fee of $129.44). Though the Graveses should have been aware of the alleged taking when they signed the 2012 FLPMA Easement, these same restrictions existed under the 1996 FLPMA Easement when they acquired the property and use of the forest road in 1999. *See* Compl. Ex. 2.

Plaintiffs also allege that the 2012 FLPMA Easement was a new iteration—a special-use permit—that was pressed upon them. *See* Compl. ¶ 17. But the 1996 Easement stated that if the Forest Service assumed control of the road as a Forest Development Road, it would "issue[] a replacement easement providing only for use of the road, . . . [and t]he replacement easement shall be in the current standard format." Def.'s Mot. Ex. 1 at 5. As the Graveses acknowledge, the Forest Service named FR 252 1B a "system road" in 2009 and issued a new easement to the Graveses in 2012. *See* Compl. ¶¶ 3, 9, 19. The Graveses were aware of the Forest Service's control and were granted an updated easement to reflect this. *Id.* Overall, while it is not necessary to determine whether the Graveses had objective knowledge of their alleged takings claim at some point prior to the 2012 FLPMA Easement, the substantial similarities between the two easements are further evidence that Plaintiffs knew or should have known of their takings claim in 2012.

### 5. There Is No Basis to Apply the Accrual Suspension Rule

Plaintiffs argue for the accrual suspension rule. *See* Pl.'s Resp. at 5 (citing *Mendez v. United States*, 135 Fed. Cl. 131, 135 (2017)). This rule holds that the accrual of a claim "may be 'suspended . . . until the claimant knew or should have known that the claim existed.'" *Mendez*, 135 Fed. Cl. at 135 (quoting *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc)). It applies in situations where the plaintiff received "mixed signals" from the government or where a claim was "inherently unknowable." *Id.*; *see Jones v. United States*, 30 F.4th 1094, 1103–04 (Fed. Cir. 2022) (citing *Martinez*, 333 F.3d at 1319); *cf. Applegate v. United States*,

10

25 F.3d 1579, 1582–83 (Fed. Cir. 1994) (holding that where landowners "had no way to determine the extent . . . of the permanent physical occupation" of their property because of uncertainty regarding the government's promise to prevent erosion, the "uncertainty [stayed] accrual of the claim"). Accrual suspension stems from the larger proposition that accrual of a takings claim starts when "all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians*, 855 F.2d at 1577.

However, the accrual suspension rule is "strictly and narrowly applied: [p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was inherently unknowable at the accrual date." *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985) (internal quotation marks omitted) (quoting *Japanese War Notes Claimants Assoc. v. United States*, 373 F.2d 356, 358–59 (Ct. Cl. 1967)); *see also Jones*, 30 F.4th at 1104 (citing *Welcker*, 752 F.2d at 1580).

Here, Plaintiffs do not demonstrate that the alleged taking was "inherently unknowable" at the accrual date. As discussed, all of the actions that the Graveses allege constitute a takings claim—that the Forest Service required them to pay fees, maintain a permit, and allow others to use the road, *see* Compl. ¶ 23—are requirements found in both the 1996 and 2012 FLPMA Easements. *See* Def.'s Mot. Ex. 2; Def.'s Mot. Ex. 1. If the terms were easily discernable from the signed easement agreement, they could not have been inherently unknowable.

Plaintiffs also fail to show that the Government "concealed its acts with the result that [P]laintiff was unaware of their existence." *Welcker*, 752 F.2d at 1580 (quoting *Japanese War Notes Claimants Assoc.*, 373 F.2d at 359). The Complaint only references a conversation with a Forest Service official that Plaintiffs allege put them on notice. *See* Compl. ¶ 19. And at oral argument, Plaintiffs' counsel stated that there was an outside agreement. *See* Oral Arg. Tr. at 13:19–23. But neither of these allegations demonstrate that the Government "concealed its acts" or made the 2012 FLPMA Easement "inherently unknowable." *Welcker*, 752 F.2d at 1580. Even where Plaintiffs do allege the outside agreement, this evidence is insufficient to meet Plaintiffs' burden to prove subject matter jurisdiction by a preponderance of the evidence. *McNutt*, 298 U.S. at 189; *Reynolds*, 846 F.2d at 747.

Moreover, the Graveses do not allege that the Forest Service prevented them from understanding the written terms of the 2012 FLPMA Easement or otherwise fraudulently concealed material facts to prevent them from learning of the alleged taking. *See Hopland Band of Pomo Indians*, 855 F.2d at 1577 ("[T]he statute of limitations can be tolled where the government fraudulently or deliberately conceals material facts relevant to a plaintiff's claim so that the plaintiff was unaware of their existence and could not have discovered the basis of his claim.") (collecting cases). Because Plaintiffs do not show that the alleged taking was inherently unknowable or concealed from them, the accrual suspension rule does not apply.

### 6.   Plaintiffs' Unconstitutional Condition Claim

Additionally, the nature of Plaintiffs' takings claim itself supports the finding that their claim accrued with the 2012 FLPMA Easement. Plaintiffs compare the USFS requirement that they sign the 2012 FLPMA Easement to the unconstitutional conditions present in cases like

11

*Koontz v. St. John's River Water Management District*. *See* Compl. ¶ 25 (citing *Koontz*, 570 U.S. 595 (2013)); Oral Arg. Tr. at 23:7–13, 24:2–23, 31:3–12. In *Koontz*, the Supreme Court held that the "government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property" without restriction and that such governmental demands for property "run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation." *Koontz*, 570 U.S. at 599, 607. Plaintiffs' comparison to *Koontz* fails for numerous reasons.

First, *Koontz* also held that "it is beyond dispute that taxes and user fees are not takings." *Id.* at 615 (cleaned up) (quoting *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 242 n.2 (Scalia, J., dissenting)). Additionally, the Graveses' 2012 Easement differs from the conditional approval in *Koontz*, where property owners could not develop their property without capitulating to demands from a state agency. *See Koontz*, 570 U.S. at 601–02 (describing permit requirements). The Graveses have never been denied use of FR 252 1B or access to the Graves Property, even though they have not always paid the minor permit fee. *See* Oral Arg. Tr. 15:15–16:24; Def.'s Mot. at 1; Def.'s Reply at 2.

However, even assuming that the special-use permit was an impermissible burden, this burden existed when Plaintiffs signed the permit. *See* Def.'s Mot. Ex. 2 at 5; Compl. ¶ 17. For the same reasons that the 2012 FLPMA Easement put the Graveses on notice that their alleged property interest was "clearly and permanently taken," the 2012 Easement similarly put them on notice of any supposed unconstitutional condition. *See Boling*, 220 F.3d at 1370 (citing *Seldovia Native Assoc., Inc. v. United States*, 144 F.3d 769, 774 (Fed. Cir. 1998)).

Ultimately, any takings claim would have accrued with the 2012 FLPMA Easement. Under the facts alleged, Plaintiffs fail to prove by a preponderance of the evidence that they did not or should not have known of the alleged takings claim from this date. Because the 2012 FLPMA Easement went into effect more than six years before Plaintiffs' Complaint was filed on June 11, 2021, this Court lacks subject matter jurisdiction over their takings claim. 28 U.S.C. § 2501.

### C. Claims for Declaratory Relief and Claims Against Individual Defendants

Plaintiffs' Complaint requests declaratory relief under the Declaratory Judgment Act. *See* Compl. at 9–10, ¶¶ 1–4. It also names two individual defendants, the Secretary of Agriculture and Chief of the Forest Service, in their personal capacities. *See id.* at 1, 2, 4.[4] The Government moves to dismiss the claim for declaratory relief and the claims against individual defendants on the grounds that this Court does not have subject matter jurisdiction over either claims for equitable relief or named parties that are not the United States. *See* Def.'s Mot. at 16–20. During briefing, Plaintiffs "concede[d] that the declaratory and injunctive relief claims should be dismissed along with the individually named defendants." Pl.'s Resp. at 15. While

---

[4] The Complaint lists Vicki Christiansen as "Chief, U.S. Department of Agriculture." Compl. at 1. This appears to be a mistake. Vicki Christiansen was the Chief of the United States Forest Service, as Plaintiffs correctly identify elsewhere in the Complaint. *Id.* ¶ 6. There is no "Chief" of the Department of Agriculture. *See* Def.'s Mot. at 19 n.10.

further analysis is unnecessary given Plaintiffs' concession, it is well established that this Court does not have jurisdiction over these claims.

The Government is correct that the Court of Federal Claims "does not have the general equitable powers of a district court to grant prospective relief." *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988).  This Court can only grant equitable relief that is "tied and subordinate to a money judgment." *James v. Caldera*, 159 F.3d 573, 580–81 (Fed. Cir. 1998).  While this Court has limited powers to grant injunctive relief, *see* 28 U.S.C. § 1491 (permitting, for example, jurisdiction for relief that is "incident of and collateral to" a money judgment, or orders related to the correction of military records), none of the limited exceptions in the Tucker Act apply to enjoining takings claims.  *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("[E]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought.").  Therefore, this Court does not have jurisdiction to grant Plaintiffs' demands for a declaratory judgment.

Additionally, this Court lacks subject matter jurisdiction over named parties that are not the United States.  "[T]he only proper defendant for any matter before [the Court of Federal Claims] is the United States, not its officers, nor any other individual." *Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003); *see also* RCFC 10(a) ("The title of the complaint must name all the parties . . . with the United States designated as the party defendant."); *United States v. Sherwood*, 312 U.S. 584, 588 (1941).  Accordingly, Plaintiffs' claims for declaratory relief and against named defendants must be dismissed.

### IV.  Conclusion

For the reasons set forth above, the Government's Motion to Dismiss is **GRANTED** and the Complaint must be **DISMISSED**.  The Clerk is hereby directed to enter judgment accordingly.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner  
CAROLYN N. LERNER  
Judge